IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville April 21, 2026

## MARTIN B. MONTEMAYOR v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. 82354     James A. Turner, Judge**

———————————————————————

### No. M2025-00058-CCA-R3-PC

———————————————————————

Petitioner, Martin B. Montemayor, pled guilty to second-degree murder and received a life imprisonment sentence without the possibility of parole. Petitioner subsequently sought post-conviction relief on the basis of ineffective assistance of counsel. The post-conviction court in Rutherford County denied relief after a hearing, and Petitioner appealed to this Court. He argues that the post-conviction court erred in dismissing his petition because (1) his guilty plea was not knowing and voluntary; (2) he received ineffective assistance of counsel; and (3) he was incorrectly sentenced as a repeat violent offender. Upon review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JILL BARTEE AYERS, J., joined.

James Patterson (at post-conviction hearing), Gallatin, Tennessee, and Cody Fox (on appeal), Murfreesboro, Tennessee, for the appellant, Martin B. Montemayor.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Trevor Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

Petitioner was indicted by the Rutherford County Grand Jury on November 16, 2019, for the first-degree murder of his wife. On April 22, 2022, three years later,

Petitioner pled guilty to second-degree murder in exchange for a sentence of life imprisonment without the possibility of parole. Petitioner agreed to be sentenced as a repeat violent offender as part of the negotiated plea agreement. Petitioner additionally waived the preparation of a presentence investigation report.

During the plea hearing, the trial court asked Petitioner if he understood the State's proposed resolution and if he agreed to the State's resolution. Petitioner responded affirmatively, "Yes, sir." Notably, the trial court asked Petitioner if he was satisfied with his plea counsel. Petitioner confirmed he was satisfied with plea counsel's performance. The trial court explained to Petitioner the constitutional rights he would be waiving by pleading guilty and asked Petitioner whether he understood those rights and still wanted to proceed. Petitioner responded, "Yes, sir."

The State then questioned Petitioner, asking if he had three prior homicide convictions from the State of Texas. Petitioner nodded his head up and down. Petitioner confirmed those homicides were three separate occurrences, stating, "Three separate, yes." After the State's questioning, the trial court asked Petitioner if he was entering the plea as a "free and voluntary act." Petitioner affirmed he was, stating, "Yes, sir." The trial court then asked whether Petitioner was coerced or forced to plead guilty. Petitioner denied his plea was coerced or forced, stating, "No, sir."

Petitioner then pled guilty to Count 1, second-degree murder. The trial court sentenced him to a term of life imprisonment without the possibility of parole and specifically found him to be a repeat violent offender. Petitioner filed a pro se petition for post-conviction relief, claiming his guilty plea was "unlawfully induced" or "involuntary" and that he received ineffective assistance of counsel. He later filed an amended petition through counsel, which raised the same claims.

*Post-Conviction Hearing*

Petitioner testified at the post-conviction hearing. He stated that he was housed at the Riverbend Maximum Security facility ("Riverbend") during his plea negotiations with the State. Petitioner had "very little privileges;" Petitioner also expressed concern about his lack of contact with others during his confinement. Petitioner stated he had been at Riverbend for approximately twenty months when he pled guilty. When asked why he chose to plead guilty, Petitioner claimed that he believed pleading guilty was his only way to get out of Riverbend. Petitioner stated his plea counsel told him that, if he pled guilty, he would be released from Riverbend and "sent out to classification in Bledsoe." Petitioner stated that, after learning his trial date would be delayed for a year, he called plea counsel and wanted to change his plea from not guilty to guilty.

On cross-examination, Petitioner confirmed he had three previous homicide convictions. Petitioner continued to insist he only pled guilty due to the conditions at Riverbend. Petitioner also admitted that the plea hearing transcript reflected he was both informed of his constitutional rights and was not promised anything in exchange for his plea.

Regarding his representation, Petitioner admitted that he had two separate attorneys prior to the guilty plea. Petitioner insisted that neither trial counsel "care[d]" about the conditions of his incarceration. Petitioner claimed initial trial counsel wanted him to plead guilty and did not discuss taking his case to trial. Petitioner also claimed plea counsel failed to explain to him that he was pleading to second-degree murder and would be sentenced as a repeat violent offender.

Initial trial counsel testified and confirmed he was the assistant public defender originally assigned to Petitioner's case. When asked if Petitioner ever raised concerns about the conditions of the Rutherford County jail, initial trial counsel responded that Petitioner did but denied telling Petitioner he did not care about his concerns. Initial trial counsel could not recall Petitioner having made a complaint about the conditions at Riverbend and explained that had Petitioner made such statements, he would have noted it.

Initial trial counsel explained that, based on his discussions with Petitioner, it was extremely important to Petitioner that this killing was not premeditated and was instead a crime of passion. Initial trial counsel confirmed that he explained to Petitioner the differences between first- and second-degree murder and shared with Petitioner the State's notice to pursue Petitioner as a repeat violent offender.

Plea counsel testified that he later represented Petitioner. Plea counsel denied Petitioner's claim that he complained about Riverbend's conditions to him, and said Petitioner agreed with his assessment that the Riverbend staff were helpful. Plea counsel also explained that Petitioner was adamant that he was not guilty of premeditated murder. Plea counsel testified that he explained to Petitioner that a plea of second-degree murder serving life without parole was the best offer the State was willing to give him.

Plea counsel stated Petitioner called him in April 2022 and said he was ready to accept the State's plea offer. Specifically, plea counsel stated that Petitioner wanted to accept the plea because he was sorry, and he did not want to put the victim's family through a trial. Plea counsel expressly denied that Petitioner said he was only pleading guilty to leave Riverbend. He confirmed he reviewed Petitioner's constitutional rights with him.

Following the hearing, the post-conviction court entered an order denying Petitioner's requested post-conviction relief. In the order, the post-conviction court found that Petitioner failed to prove by clear and convincing evidence that his plea was not entered into knowingly and voluntarily. Specifically, the post-conviction court concluded that Petitioner's testimony during the post-conviction hearing conflicted with "much of his testimony during the entry of the negotiated plea agreement," and these contradictions "negatively affect his credibility in an obvious way." Conversely, the post-conviction court found the testimony of both initial trial counsel and plea counsel highly credible. The post-conviction court concluded the guilty plea hearing transcript sufficiently confirmed Petitioner was advised of his constitutional rights.

The post-conviction court also rejected Petitioner's ineffective assistance of counsel claim and noted that, because Petitioner failed to prove by clear and convincing evidence that his plea was not entered into knowingly and voluntarily, the only remaining claim to assess was whether Petitioner's trial counsel knew of Riverbend's conditions and failed to assist him. The post-conviction court determined that both initial trial counsel's and plea counsel's testimony confirmed that "at no point in the course of their representation did the petitioner ever make a complaint about the conditions at Riverbend." Thus, the post-conviction court held that Petitioner failed to demonstrate by clear and convincing evidence that his trial counsels' performance was deficient or that he was prejudiced by any alleged deficiency.

Additionally, the post-conviction court denied Petitioner's claim that the trial court designated him a repeat violent offender without proper support from the record. The post-conviction court noted the State provided certified copies of Petitioner's prior murder convictions, and therefore, he is a repeat violent offender pursuant to the statute.

It is from this order that Petitioner filed a timely notice of appeal.

**Analysis**

On appeal, Petitioner argues that the post-conviction court erred in denying his relief. The State disagrees and asserts Petitioner's guilty plea was voluntary, and that Petitioner failed to demonstrate trial counsel were deficient or that any of the alleged deficiencies Petitioner raised prejudiced him.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those

findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572,578 (Tenn. 1997). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); see also *Kendrick*, 454 S.W.3d at 457.

## I.    Petitioner's Guilty Plea

Petitioner claims his guilty plea was not "knowing and voluntary" because he was coerced into pleading guilty to avoid the alleged poor conditions at Riverbend.[1] Additionally, Petitioner asserts his mental state at the time prevented him from fully understanding the conditions of the plea, and claims he was "heavily medicated" during the proceedings.

In order for a guilty plea to be valid, it must be made "knowingly, voluntarily, and intelligently." *Ward v. State,* 315 S.W.3d 461, 465 (Tenn. 2010) (citations omitted). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969)). "[T]he standard of inquiry is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ward*, 315 S.W.3d at 465 (citation and internal quotation marks omitted).

In order to determine whether a plea is knowing and voluntary, the trial court must look to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him;

---

[1] Petitioner's brief cites to *Friedmann v. Parker*, 573 F. Supp. 3d 1221 (M.D. Tenn. 2021), in which the court held that the defendant's pretrial confinement at Riverbend violated his due process rights. However, in that case, the defendant was housed in an "iron man cell", which was one of two such cells that had even more restrictions than the remaining cells in Unit 1. The record does not reflect Petitioner was specifically housed in an "iron man" cell.

the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904. Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244. Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, "as well as any findings made by the [trial court] accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Here, the post-conviction court concluded Petitioner failed to prove by clear and convincing evidence that his plea was not entered into knowingly and voluntarily. The post-conviction court based its order primarily on its finding that Petitioner's conflicting testimony was not credible, while the testimony of both initial trial counsel and plea counsel was highly credible.

First, Petitioner's insistence that he was unaware of what it meant to plead guilty in his case is in direct conflict with the testimony of his trial counsel and of his own lived experience. Petitioner benefited from the expertise of two attorneys. Initial trial counsel testified that he described the difference between first- and second-degree murder to Petitioner and provided him notice of the State's intent to pursue Petitioner as a repeat violent offender. Plea counsel confirmed that he reviewed Petitioner's constitutional rights with him "line-by-line" and explained the ramifications of accepting the State's plea offer. The trial court also gave Petitioner a thorough explanation of his rights and specifically asked if Petitioner understood the nature and conditions of his guilty plea. Petitioner affirmed, again and again, that he was aware of his constitutional rights and that he was freely choosing to plead guilty. By Petitioner's own admission at the post-conviction hearing, he offered no evidence, other than his own, now conflicting testimony, that he was ignorant of the conditions of the plea.

Second, Petitioner's assertion that he pled guilty solely to avoid further confinement at Riverbend is also contradictory to the statements he made to his trial counsel. Both initial trial counsel and plea counsel testified that Petitioner was adamant that the killing of his wife was not premeditated, but rather a crime of passion. Petitioner avoided a potential conviction for first-degree premeditated murder when he pled guilty to second-degree murder. Petitioner also expressed to plea counsel that he did not want to put the victim's family through the ordeal of a trial, something which was also achieved by pleading guilty.

Petitioner has failed to show his guilty plea was made unknowingly and involuntarily. He is not entitled to relief.

## II. Ineffective Assistance of Counsel

Petitioner asserts his trial counsel was ineffective because (1) trial counsel was aware of his pretrial detention conditions at Riverbend, and (2) trial counsel, having been made aware of such conditions, failed to investigate those conditions.

The right to effective assistance of counsel is safeguarded by the constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; see also *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

Regarding the second *Strickland* prong, trial counsel's deficient performance in a guilty plea will be found to have prejudiced the defendant only if "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Further, once a defendant enters

a guilty plea, the effectiveness of counsel is only relevant to the extent that it affects the voluntariness of the plea. *Hill*, 474 U.S. at 56 (1985).

We have determined that Petitioner failed to establish by clear and convincing evidence that his plea was involuntary. Therefore, just as the post-conviction court noted, the *Strickland* analysis here is limited to whether Petitioner's trial counsel knew of his alleged conditions at Riverbend and failed to investigate further.

The testimony of both initial trial counsel and plea counsel, once again, is contrary to Petitioner's allegations. Both clearly stated Petitioner did not tell them about the very conditions in Riverbend he now raises. Initial trial counsel stated that he could not recall Petitioner raising any specific complaints about his confinement at Riverbend. Plea counsel explained that, far from complaining about Riverbend, Petitioner agreed with plea counsel's statement that Riverbend's staff was "helpful." Additionally, Petitioner has presented no evidence, beyond his testimony, verifying the alleged conditions at Riverbend. Because "questions concerning the credibility of the witnesses" are the purview of the post-conviction court, this Court will rely on its findings that the testimony from both initial trial counsel and plea counsel were more credible than that of Petitioner. Thus, the record demonstrates that neither was aware of Petitioner's alleged complaints, and so, under *Strickland* and its progeny, counsel were not ineffective.

Finally, Petitioner, in his brief, attempts to raise the unsupported claim that his counsel at the post-conviction hearing was ineffective for failing to further establish evidence of his mental condition at the time of his plea. Petitioner, however, has no constitutional right to the effective assistance of counsel at a post-conviction proceeding. *See Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). He is only entitled to "the opportunity to be heard at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004). Thus, post-conviction counsel is held to a "minimum standard of service." *Frazier*, 303 S.W.3d at 680.

Petitioner is not entitled to relief on this issue.

### III. *Repeat Violent Offender Sentencing*

Petitioner claims he was incorrectly sentenced as a "repeat violent offender" because the trial court allegedly did not conduct the necessary steps pursuant to the statute. A "repeat violent offender" is one who "is convicted in this state on or after July 1, 1994, of any offense classified in subdivision (b)(1) as a violent offense; and (2) has at least two (2) prior convictions for offenses classified . . . as a violent offense." Tenn. Code Ann. § 40-35-120(a)(1)-(2). Violent offenses include first-degree and second-degree murder. *Id.* § 40-35-120(b).

Our supreme court has held that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." *Hicks v. State*, 945 S.W.2d 706, 709 (Tenn. 1997). As discussed at length, Petitioner has failed to prove by clear and convincing evidence that his guilty plea was involuntary, and as such, he has waived appeal on this claim.

Even if Petitioner had not waived this claim, he would not be entitled to relief. The record shows the State filed proper notice of intent to request that the Petitioner be sentenced as a repeat violent offender and provided certified copies of Petitioner's previous qualifying convictions. Petitioner also confirmed during both his plea hearing and his post-conviction hearing that the State's presentation of his criminal history was correct. Finally, the trial court made explicit findings in the plea hearing that Petitioner qualified as a repeat violent offender. Petitioner is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing reasons, the judgment of the post-conviction court is affirmed.


*S/Timothy L. Easter*
TIMOTHY L. EASTER, JUDGE